UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 OCT -3 AM 11: 14
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **Reginald Wilson,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | CV 01-BU-237-S |
| **MCRAE'S, INC.,** | ) | |
| **Defendant.** | ) | |

**ENTERED**
OCT 0 3

# MEMORANDUM OPINION

Reginald Wilson ("Plaintiff") filed this case on January 26, 2001, alleging that his former employer, McRae's, Inc. ("Defendant"), discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"). Now before the Court is Defendant's motion for summary judgment (Doc. No. 45). The parties have filed evidence and briefs on the motion, which is now ripe for decision. The Court concludes that Defendant's motion for summary judgment is due to be DENIED. However, upon its own examination of the record, the Court finds that

there appears to be undisputed evidence therein indicating that Defendant is entitled to judgment as a matter of law on several of Plaintiff's claims. However, because Defendant did not properly present its arguments relating to the evidence, Plaintiff will be given until October 10, 2001 to present any evidence and arguments demonstrating that summary judgment should not be entered on these claims.

## I. BACKGROUND[1]

At the time of the events giving rise to this litigation, Defendant McRae's was a subsidiary of Proffitt's, Inc. ("Proffitt's").[2] In the fall of 1996, Proffitt's purchased the Birmingham-based department store company Parisian, Inc. ("Parisian") as part of a corporate merger and acquisition. As a result of the acquisition, certain operational departments such as Information Technology ("IT") and Accounting that had been performed by Parisian employees in Birmingham were moved to the Proffitt's Operation Center in Jackson, Mississippi. In addition, the computer systems of the two formerly independent companies were to be integrated. This was

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only." Underwood v. Life Ins. Co. of Georgia, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998) (quoting Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)).

[2] Proffit's was later renamed Saks Incorporated. Throughout the time period relevant to the instant litigation, the Plaintiff's employer was McRae's.

to be accomplished by transferring and consolidating the separate mainframe[3] systems in Jackson. The IT department was responsible for the integration of the computer systems. When the mainframe functions were consolidated in Jackson after the merger, most of the mainframe operations IT employees were either transferred to Jackson or terminated.

Plaintiff is a black male who began his career with Parisian in 1993. His first position had been Supervisor of Computer Operations, a job that included monitoring processing data transmissions for both mainframe computers and personal computers ("PCs"). Just prior to the merger, Plaintiff was moved laterally to the position of Quality Assurance. This position, also in the "Operations" area, required that the Plaintiff make certain that the testing done by the programmers was accurate before the programs were put into use in the system. Some of these programs were mainframe programs, while others were PC programs.

In May of 1997, Plaintiff was transferred to Jackson and assumed a new job-- that of Operations Manager. This job was another "operations" position and it entailed supervising the mainframe computer operators. There is sharp disagreement between the parties as to whether the Plaintiff transferred to Jackson willingly, as well

---

[3]This term refers to "any large or general-purpose computer, especially one supporting numerous peripherals or subordinate computers." OXFORD ENGLISH DICTIONARY (2d ed. 1989).

as to whether he intended to settle there permanently. Whatever his feelings about the relocation, for the duration of Plaintiff's time in Jackson, his wife remained in Birmingham at her job and the couple visited on the weekends.

The integration of the mainframes, as well as of the post-merger personnel, was not seamless. Apparently the situation in Jackson following the merger was characterized by an internecine struggle between the operations and technical staffs. The allocation of computer space between the respective departments was among the chief catalysts of the ongoing strife. See Defendant's Exhibit 13. On July 17, 1998, Plaintiff and John Suber, a programmer, had disagreement regarding a work assignment that Plaintiff had given him. Suber "lost his cool," and was overheard shouting at Plaintiff, "I do not work for you, I will not work for you, don't walk away from me laughing, let's go see your boss." Shortly after this outburst, an IT employee stated that she overheard two men matching Suber's and his supervisor's descriptions using racial epithets. Specifically, one man was heard saying "the nigger's got to go, our way or his way." Management began investigating the matter later that same day, and soon concluded that Suber and his supervisor, Lee Atkinson, were responsible for the noxious remarks. Both men were immediately fired.[4]

---

[4] An intra-office memorandum signed by Paul D. Shore dates the firing at July 24, 1998, one week after the incident occurred. Plaintiff, however, believes that it took management two or three weeks before Suber and Atkinson were fired, during which time they allegedly threatened Plaintiff.

Several months after the Suber/Atkinson incident, around October or November of 1998, Plaintiff was transferred back to Birmingham. Plaintiff was told that his new job title would be Project Manager over Special Projects and that this position would be temporary until a permanent position could be established. Plaintiff's primary responsibility was to convert Parisian computer systems to Proffitt's systems. In addition, Plaintiff also worked on some Y2K-related projects. Plaintiff alleges that a permanent position for a Senior Program Analyst opened up in November of 1998, that he was qualified for the position, but that it was instead given to Bob Sabinske, a white male. Plaintiff notes that Rob Stallworth replaced Sabinske in this Senior Program Analyst position July of 2000. Plaintiff also suggests that at least one person, Windell Manuel, had asked Plaintiff whether he was interested in this programming position. Plaintiff concedes, however, that he never applied for this promotion.

In 1999, Plaintiff began working under Tom Massey as a Lead Operations Analyst -- a permanent position in Birmingham. In May of 1999, Massey met with Plaintiff and outlined a list of tasks that Plaintiff was to complete before the close of the year. Whether Plaintiff accepted these responsibilities is subject to dispute–the

Defendant argues that Plaintiff essentially refused to continue with the Lead Operations Analyst position as constituted, while the Plaintiff contends that he accepted his responsibilities, but would have liked some modifications.

In late 1999 a permanent position, the MIO System Owner of Replenishment, became available. The job functions for this position were "to ensure data integrity, to design the system based on end-use knowledge, experience and end-user input." Essentially the position entailed responsibility for working with merchandise buyers to make sure that the inventory needs of each store were met. One of the requirements for the job was that a candidate had to have at least one year of experience as an "actual user," meaning that an applicant would have worked in merchandising, buying or distribution centers as an actual user of the system. Plaintiff applied for the position and was given an interview. Three candidates for the position were interviewed. As Plaintiff did not have any merchandising experience, he did not receive the position. The candidate who was selected had over eight years of merchandising experience.

On January 21, 2000, two Human Resources directors came to Birmingham to meet with Plaintiff and fired him, without offering to transfer his Lead Operations

Analyst position to Jackson.[5]

After being terminated from the Lead Operations Analyst position in Birmingham, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on January 25, 2000, alleging that the Defendant had discriminated against him on the basis of race. After the EEOC investigated the claims submitted, it dismissed the charge and issued Plaintiff a right to sue letter. The Plaintiff filed this action on January 24, 2001, alleging claims under Title VII and Section 1981. Defendant filed its motion for summary judgment on August 17, 2001.

## II. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial

---

[5]Defendant asserts that Plaintiff was offered a transfer to Jackson as an alternative to termination. Plaintiff denied that such an offer was made. For purpose of this summary judgment determination, the Court will assume that no such offer was extended.

responsibility of informing the Court of the grounds for the motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996); see also Resolution Trust Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), cert. denied sub. nom., 516 U.S. 817 (1995).

Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

III. CONTENTIONS & ANALYSIS

A. Failure to Promote Claims

Plaintiff claims that Defendant is liable for discriminating against him in not promoting him on the basis of race, in violation of both Title VII and Section 1981. Both of these statutes prohibit race discrimination in employment, and both have the same requirements of proof and use the same analytical framework. Alexander v. Fulton County, Ga., 207 F.3d 1303, 1314 n.6 (11th cir. 2000) (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, the Court discusses Plaintiff's Title VII and Section 1981 claims simultaneously.

Plaintiff does not allege that there is any direct evidence that he was subjected to race discrimination. Therefore, the Plaintiff must prove his case through circumstantial evidence, under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S.792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Eskra v. Provident Life & Accident Ins. Co., 125 F.3d 1406, 1411 (11th Cir. 1997). If he meets the burden, then a presumption arises that the challenged action was motivated by a discriminatory intent. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir. 1989). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment action. Burdine,

450 U.S. at 254-55. If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really a pretext for unlawful discrimination. Id. at 255-56.

Where a plaintiff is arguing that he has "lost out" to another candidate in competition for a coveted position, the Eleventh Circuit applies that standard articulated in Crawford v. Western Elec. Co., 614 F.2d 1300 (5th Cir. 1980):[6]

> [P]laintiffs may establish a prima facie violation by showing that they are members of a group protected by Title VII, that they sought and were qualified for positions that [the defendant employer] was attempting to fill, that despite their qualifications they were rejected, and that their rejection [the defendant employer] *either* continued to attempt to fill the position(s) *or* in fact filled the position(s) with [persons outside the plaintiff's protected class].

Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998) (citing Crawford, 614 F.2d at 1315) (internal citation omitted) (emphasis added). Both the Plaintiff and the Defendant in the instant action labor under a version of this standard abrogated in *Walker*, requiring a plaintiff to prove at the prima facie stage that another equally or less qualified employee, who was not a member of the [plaintiff's] protected class received the promotion. This standard, originating from dicta in Perryman v. Johnson Prods. Co.,

---

[6]In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

698 F.2d 1138 (11th Cir. 1983), had been articulated in a number of Eleventh Circuit opinions – two of which were explicitly relied upon by Plaintiff. See Plaintiff's Brief at 15. The *Walker* court concluded, however, that a plaintiff may never be required to establish that he is more qualified than the successful promotee, at any stage of the *McDonnell Douglas* burden-shifting pavane. Walker, 158 F. 3d at 1192. The court held that a plaintiff *may* be forced to address relative qualifications if the defendant presents them to rebut the plaintiff's presumption of discrimination, but that at the prima facie stage, need only introduce evidence that he himself was qualified to perform the coveted job. Id. at 1193.

Plaintiff identifies three job openings to which he was not promoted, allegedly by reason of his race. Those positions are: (1) MIO System Owner Replenishment, (2) Program Analyst, and (3) Senior Program Analyst. Of the three job openings identified by Defendant as being at issue, only one, the Senior Program Analyst position, requires more extended analysis.[7] There is no dispute that the Plaintiff is a member of a protected

---

[7] Plaintiff concedes that he was not qualified for the System Owner Replenishment position. Plaintiff's Brief at 4 & n.11. In addition, the opening filled in July of 2000 by Rob Stallworth for the Program Analyst position did not exist at any time during Plaintiff's tenure at the Defendant's firm which ended in jauary of 2000. However, Defendant raises this argument for the first time in its reply brief. The Defendant has properly raised only the issue of Plaintiff's *qualifications* for the Program Analyst position, so it would be unfair to grant summary judgment on another ground without first giving the Plaintiff an opportunity to respond. There are many cases holding that courts will not consider evidence or arguments first presented in a reply brief. See, e.g., Reliance Ins. Co. of Ill., Inc. v. Richfield Hospitality Sevices, Inc., 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000).

class, in that he is black, or that he was not promoted and that a white man, Bob Sabinske, was promoted to the Senior Program Analyst position. The Defendant argues that Plaintiff has not met his prima facie case based upon two alleged defects: (1) that he has not introduced sufficient evidence that he was qualified for the position, and (2) that he did not "apply" for the position. However, in its "Statement of Issues Presented," the Defendant has only put at issue Plaintiff's qualifications for the coveted positions. Therefore the Court will deem other issues raised, including whether the Plaintiff "applied" for the position, to be waived for purposes of this motion.[8]

The Defendant argues that Plaintiff relies on evidence insufficient to prove that he was "qualified" for the Senior Program Analyst position. The Court notes that the Defendant has not introduced any evidence specifically describing what the qualifications for this job were. The Plaintiff asserts that competency in the use of the Excel program, and perhaps customer service skills, are the only qualifications for this position. The Defendant does not allege that these are not qualifications for the position,

---

The Plaintiff asserts that he is qualified for this position for the same reasons that he is qualified for the Senior Program Analyst position. Defendant argues that the Program Analyst position required significantly different skills than did the Senior Program Analyst position. However, Defendant raised this issue for the first time in its reply brief as well. Therefore, the Court finds that Plaintiff offered sufficient evidence to overcome an adverse ruling on summary judgment on the issue of qualifications for the Program Analyst position.

[8]See Appendix A, § II(B)(2).

nor does it allege that there are other qualifications that Plaintiff did not meet. The Plaintiff has offered more than mere subjective statements that he was qualified. He asserts that he could use Excel, and COBOL, and that he has had incidental contact with programming work over the course of his career. Without a more developed record outlining the selection process and the criteria used for filling the Senior Program Analyst position, it is difficult to say whether Plaintiff is qualified for the position. The Court finds that the Defendant has failed to carry its initial burden of production on this issue, insofar as it failed to demonstrate that the Plaintiff's qualifications for the Senior Program Analyst position are even in dispute. Summary judgment is therefore due to be denied on this claim.

B. Failure to Transfer/Wrongful Termination Claim

Plaintiff also argues that he was illegally fired from his final position at the Defendant's firm, that of Lead Operations Analyst. Plaintiff asserts that he was informed that his position was being transferred to Jackson, Mississippi, and that he was not offered an opportunity to transfer there. The Defendant concedes that the Plaintiff has carried his burden of making out a prima facie case of race discrimination with respect to its termination and refusal to transfer of Plaintiff. The Defendant argues that Plaintiff was terminated because his job responsibilities as a Lead Operations Analyst in Birmingham had evaporated by early 2000, and that they did not transfer Plaintiff

because he refused the offer. Plaintiff disputes that the Lead Operations Analyst job had to be moved to Jackson for business reasons. Plaintiff also disputes that such an offer was refused, and, as Defendant correctly observes, for the purposes of this summary judgment motion and viewing the facts in the light most favorable to the Plaintiff, the Court must assume that the transfer option was not offered. Defendant now argues that the offer was not made because it was under the impression that Plaintiff was so opposed to moving back to Jackson that it would have been futile to extend the offer.

The Defendant asserts that, because Plaintiff has not adduced any evidence that Plaintiff was terminated because of his race, or that the proffered reasons for the termination were pretextual, its motion for summary judgment on this claim is due to be granted. However, the Supreme Court has stated that where a factfinder disbelieves the reasons put forward by the defendant, taken together with the plaintiff's prima facie case, it is permitted to infer the ultimate fact of intentional discrimination. See, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511(1993). This is particularly true when the employer's offered justification has been eliminated. In such a case, discrimination may be the most likely alternative explanation, "especially since the employer is in the best position to put forth the actual reason for its decision." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2109 (1999) (citing Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978) (quotation omitted)). In other words, the plaintiff may prove

pretext by introducing evidence that negates the defendant's proffered nondiscriminatory reason for the action.

In the instant case, the Defendant's proffered reason for not offering Plaintiff the transfer is that it believed that Plaintiff would not want to move to Jackson, so that an offer would have been futile. This justification is directly contradicted by the fact that Plaintiff had previously accepted a transfer to Jackson. Indeed, the Plaintiff had transferred to Jackson from Birmingham in 1997 and worked there for one and a half years. In addition, Plaintiff has presented evidence that demonstrates a willingness to perform a number of other positions at the Defendant firm. The Plaintiff has thus provided evidence of a material factual dispute with respect to Defendant's proffered reason for not extending a transfer offer. The Court finds that this evidence is sufficient to support the inference that the Defendant did not hire Plaintiff for jobs for which he was qualified at the time of his discharge because of his race. See, e.g., Jameson v. Arrow Co., 75 F. 3d 1528, 1534 (11th Cir. 1996) (finding that plaintiff's "general willingness" to work at defendant firm, coupled with factual questions surrounding the relocation of the position from Chestnut to Atlanta, precluded the district court from properly granting summary judgment for the defendant).

Defendant's proffered reason for not offering the transfer to Plaintiff appears to be the sort of "post-hoc" formulation from which pretext can be inferred. Cf. Batey v.

Stone, 24 F. 3d 1330, 1335-36 (11th Cir. 1994) (finding defendant's proffered reasons for the employment action in sex discrimination suit undercut by other evidence in the record). The Court concludes that, at this juncture, these material factual disputes should proceed to trial. Summary judgment is therefore due to be denied on this claim.

## IV.   CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motion for summary judgment (Doc. No. 45), is due to be DENIED. Plaintiff has produced sufficient evidence to establish his prima facie case of race discrimination under Title VII and Section 1981 with respect to both of his failure to promote claims and his failure to transfer claim. However, the Court, on its own motion, moves Plaintiff to come forward with evidence demonstrating why this Court should not, *sua sponte*, enter summary judgment in favor of Defendant on Plaintiff's two remaining failure to promote claims. As grounds for its actions, the Court notes that the parties have submitted evidence to this Court indicating the following facts: (1) that the promotion for which Plaintiff claims he was discriminatorily passed over occurred on November 16, 1998; (2) that Plaintiff did not file his charge of discrimination with the EEOC until January 25, 2000; (3) that Plaintiff did not file his complaint asserting a violation of Section 1981 until January 24, 2001; and (4) that the Program Analyst position, filled by Rob Stallworth in July of 2000, did not exist at any time while the Plaintiff was in Defendant company's employ.

As the Senior Program Analyst position appears to have been filled more than 180 days prior to Plaintiff's filing a charge, it would be untimely. Similarly, as Section 1981 has a two-year statute of limitations, the claim under said statute would also appear to have been untimely filed. Finally, because the Program Analyst position seems not to have existed prior to Plaintiff's termination, he would have no claim that he was illegally passed over for that promotion.

As Plaintiff stipulated to his being unqualified for the System Owner Replenishment position, his claim for failure to be promoted to that position is DISMISSED WITH PREJUDICE.

DONE and ORDERED this 2rd day of October, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE